IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFF JACKSON                                         *
       Plaintiff,
  v.                                                        *   CIVIL ACTION NO. DKC-07-743

SHERIFF JANNEY                                   *
DEPUTY CORMIER
DEPUTY PASSWATER                            *
DEPUTY SHATELY
WARDEN FOSTER                                   *
ASSISTANT WARDEN LINDA LANNEN
LT. GOODLEY                                           *
       Defendants.
                                       ***

**MEMORANDUM**

Procedural History

On March 21, 2007, the court received for filing a 42 U.S.C. § 1983 civil rights complaint submitted by Cecil County Detention Center ("CCDC") prisoner Jeff Jackson, alleging that on October 6, 2006, criminal charges of second degree assault were filed against him by CCDC authorities purely based upon his race. Plaintiff denies involvement in the assault and complains that his request for a jury trial was denied in the District Court for Cecil County. He further claims that he was not checked for injuries. Plaintiff asks that this court investigate racial practices in Cecil County, Maryland and the CCDC and seeks $1,300,000.00 in damages.

On July 2, 2007, Defendants filed a Motion to Dismiss, or, Alternatively, for Summary Judgment which remains unopposed as of the within signature date.[1] *See* Paper No. 9. The case is ready for review. Oral hearing is unnecessary. *See* Local Rule 105.6. For reasons to follow, Defendants' Motion, treated as one for summary judgment, shall be granted.

---

[1] Plaintiff sought and was granted additional time, to and including October 8, 2007, to file a response. Paper No. 15

Standard of Review

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the
> burden of proof at trial on a dispositive issue, a summary judgment

2

>motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D. N.C. 1966)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Analysis

According to the unopposed record, on October 6, 2006, CCDC prisoner Jeffrey Workman reported that he had been assaulted or "jumped" on by eight other prisoners in the Upper D. Block at CCDC. Paper No. 9, Exs. 1 & 2. Workman identified Plaintiff as one of the eight assailants. *Id*., Ex. 2. Workman was first taken to the medical unit, where he was observed to have minor scratches on his face and a small cut on the inside of his lip, and was then escorted to the administrative office to give his account of the incident. *Id*. The cell block was placed on lock down and Workman was later moved to the Special Housing Unit. *Id*., Ex. 1.

Cecil County Deputy Sheriffs Cormier and Passwaters arrived and met with Workman in the CCDC law library to conduct a criminal investigation. *Id*., Ex. 2. According to their report,

3

Workman stated that he had been attacked by "all the blacks on the cell block" while he was in his cell. Paper No. 9, Ex. 2. He claimed that he defended himself by throwing salt at the first prisoner who approached and in return two of the other prisoners threw bleach on Workman. *Id*. Deputies Cormier and Passwaters observed that Workman had a swollen left eye and lip and that there were discolored areas on Workman's shirt. *Id*. Workman stated that after other prisoners entered his cell he was punched but managed to shove his way out and enter an open cell, at which point the incident ended. *Id*. Workman claimed he knew all of his assailants by name and identified each prisoner by their last name. *Id*. Cormier and Passwaters confirmed that each prisoner was housed in the cell block at the time of the incident. *Id*.

The investigation resulted in the filing of charges by Deputy Cormier on October 15, 2006. *Id*., Ex. 3  Arrest warrants were issued for and served upon each of the assailants identified by Workman, including Plaintiff, on second-degree assault charges. *Id*. Defendants state the charges were subsequently dismissed when subsequent to his release Workman failed to appear at trial.[2]

The court has generously construed this *pro se* Complaint as raising three separate claims. First, Plaintiff appears to allege that he was charged with second-degree assault without probable cause in violation of the Fourth Amendment. Second, he claims that the charges against him were

---

[2] Defendants provide no record to document this statement, nor do they discuss the proceedings associated with the arrest warrant, *e.g.*, review and signature by a commissioner or Plaintiff's initial appearance and commitment on the warrant. The District Court for Cecil County docket from *State v. Jackson*, Criminal No. 4K00037762, shows that the warrant was signed on October 17, 2006, and indicates that the second-degree assault charge was *nolle prossed* on February 7, 2007.

4

filed with racial animus. Third, Plaintiff claims that CCDC personnel failed to examine him for injuries after the incident.

In order to succeed on his Fourth Amendment claim, Plaintiff must demonstrate that his arrest was not supported by probable cause.[3] Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime.[4] *See Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998).

The unopposed record shows that there was probable cause for Deputy Cormier to file criminal charges against Plaintiff. Prisoner Jeffrey Workman contacted prison authorities to claim that he had been assaulted by several other prisoners in the housing unit. During the course of an interview with two sheriff's deputies, including Cormier, Workman identified Plaintiff as one of eight prisoners who assaulted him on October 6, 2006.[5] Defendants are entitled to judgment as to this claim.[6]

---

[3] The Fourth Amendment right to be arrested only on probable cause is clearly established. *See Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996). A claimant's allegations that police seized him "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a ... claim alleging a seizure that was violative of the Fourth Amendment." *Brooks*, 85 F.3d at 183-84.

[4] Plaintiff's claim of discrimination represents a bald assertion and is not supported by the evidence.

[5] The court observes that only Defendant Cormier pursued criminal charges. Therefore, a Fourth Amendment claim has not been stated against the other six Defendants.

[6] Defendants alternatively claim that the suit is barred by qualified immunity. The court is inclined to agree. The grant of qualified immunity is provided so that government officials can perform their duties free from the specter of endless and debilitating lawsuits. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Determining whether an officer is entitled to qualified immunity is a two-step inquiry. First, a court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively

With regard to Plaintiff's sparse medical claim, the court finds no Fourteenth Amendment violation. A pretrial detainee's medical claim may sound under the Due Process Clause.[7] There is no practical difference, however, between the due process standard and the Eighth Amendment protection standards, *i.e.*, substantial risk and deliberate indifference, available to a convicted prisoner. *See Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978). Consequently, to establish a claim of this nature, Plaintiff must satisfy two requirements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than

---

reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *see also Miller v. Prince George's County, Maryland*, 475 F.3d 621, 626-27 (4th Cir. 2007).

The significance of these principles for this lawsuit is clear. In determining whether Defendants are entitled to qualified immunity, the guiding principle is that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).

Given this court's finding that there was probable cause to issue the charging application, Defendants are entitled to qualified immunity with regard to this issue.

[7]     Defendants do not state whether Plaintiff was confined at CCDC as a pre-trial detainee or convicted offender. As the United States Court of Appeals for the Fourth Circuit has held that the due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners, *see Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998); *Whisenant v. Yuam*, 739 F.2d 160, 163 n.4 (4th Cir. 1984), the court finds his custody status is not an issue.

acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Prison personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

Defendants correctly observe that Plaintiff does not allege the existence of any injury or medical condition that required evaluation and treatment. There is nothing in the Complaint or record which demonstrates that Plaintiff had a serious medical condition as a result of the October, 2006 incident and Defendants knowingly ignored the problem. This claim shall too be rejected.

For the aforementioned reasons Defendants' motion for summary judgment shall be granted and judgment shall be entered in their favor and against Plaintiff. A separate Order follows.

Date: October 23, 2007               _____/s/_____
                                     ALEXANDER WILLIAMS, JR.
                                     for DEBORAH K. CHASANOW
                                     United States District Judge